# 23-7294

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆◆

HUZHOU CHUANGTAI RONGYUAN INVESTMENT MANAGEMENT PARTNERSHIP,
HUZHOU HUIHENGYING EQUITY INVESTMENT PARTNERSHIP, HUZHOU
HUIRONGSHENG EQUITY INVESTMENT PARTNERSHIP,

*Petitioners-Appellees,*

—against—

HUI QIN,

*Respondent-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

## BRIEF AND SPECIAL APPENDIX FOR RESPONDENT-APPELLANT

---

| | |
|---|---|
| GEOFFREY SANT | AMIAD M. KUSHNER |
| ANDREW C. SMITH | JENNIFER BLECHER |
| PILLSBURY WINTHROP SHAW | XINTONG ZHANG |
|   PITTMAN, LLP | SEIDEN LAW LLP |
| 31 West 52nd Street | 322 Eighth Avenue, Suite 1200 |
| New York, New York 10019 | New York, New York 10001 |
| (212) 858-1000 | (646) 766-1914 |
| *Attorneys for Petitioners-Appellees* | *Attorneys for Respondent-Appellant* |

**<u>TABLE OF CONTENTS</u>**

PAGE

INTRODUCTION ................................................................................................1

STATEMENT OF JURISDICTION.................................................................10

STATEMENT OF THE ISSUES.....................................................................11

STANDARD OF REVIEW ..............................................................................12

STATEMENT OF THE CASE.........................................................................13

    Petitioners' Renewed Motion to Compel and
    the August 17 Order ................................................................................ 13

    Qin's Compliance with the August 17 Order........................................ 14

    Petitioners Withhold Qin's Phones and
    Demand Passwords to Three Accounts ................................................. 16

    The District Court Adopts Petitioners' False Claims and
    Orders Qin Imprisoned If Additional Passwords Were Not Provided............ 23

    Petitioners and Petitioners' Expert Admit that
    Petitioners' Claims Were False ............................................................. 24

    Qin Notifies Petitioners of Their False Claims and
    Demands That Petitioners Correct the Record ..................................... 27

    Qin Moves to Vacate the August 24 Order and for Sanctions.......................... 27

    The District Court Denies Qin's Rule 60(b) Motion ......................................... 30

ARGUMENT .....................................................................................................32

PAGE

I. THE DISTRICT COURT ERRED IN HOLDING
QIN IN CONTEMPT ...................................................................... 32

II. THE DISTRICT COURT ABUSED ITS
DISCRETION IN NOT VACATING THE CONTEMPT FINDING
UNDER RULE 60(B)(1) AND (3) ................................................ 41

III. THE DISTRICT COURT'S DENIAL OF
SANCTIONS WAS A CLEAR ABUSE OF DISCRETION .......................... 46

CONCLUSION .............................................................................48

# <u>TABLE OF AUTHORITIES</u>

PAGE(S)

## <u>Cases</u>

*Apex Oil Co. v. Belcher Co.*,
   855 F.2d 1009 (2d Cir.1988) ...............................................................47

*Catskill Dev., L.L.C. v. Park Place Entm't Corp.*,
   286 F. Supp. 2d 309 (S.D.N.Y. 2003) ........................................... 43, 44

*CBS Broad. Inc. v. FilmOn.com, Inc.*,
   814 F.3d 91 (2d Cir. 2016) ...................................................................38

*Chevron Corp. v. Donziger*,
   990 F.3d 191 (2d Cir. 2021) .................................................................34

*Close-Up Int'l v. Berov*,
   411 Fed. App'x. 349 (2d Cir. 2010) .....................................................10

*Drywall Tapers, Local 1974 v. Local 530, Operative Plasterers Int'l Ass'n*,
   889 F.2d 389 (2d Cir. 1989) .................................................................32

*Enmon v. Prospect Capital Corp.*,
   675 F.3d 138 (2d Cir. 2012) ........................................................... 46, 47

*Canfield v. Van Atta Buick/GMC Truck, Inc.*,
   127 F.3d 248 (2d Cir. 1997) .................................................................12

*F.T.C. v. BlueHippo Funding, LLC*,
   762 F.3d 238 (2d Cir. 2014) .................................................................12

*FTC v. Verity Int'l, Ltd.*,
   443 F.3d 48 (2d Cir. 2006) ...................................................................12

PAGE(S)

*First Am. Corp. v. Price Waterhouse LLP*,
   154 F.3d 16 (2d Cir. 1998) ...................................................................40

*Gucci Am., Inc. v. Weixing Li*,
   768 F.3d 122 (2d Cir. 2014) .................................................................35

*Hess v. New Jersey Transit Rail Operations, Inc.*,
   846 F.2d 114 (2d Cir. 1988) .................................................................32

*Huebner v. Midland Credit Mgmt.*,
   897 F.3d 42 (2d Cir. 2018) ...................................................................46

*In re 310 Assocs.*,
   346 F.3d 31 (2d Cir. 2003) ...................................................................42

*In re Bulk Oil (USA), Inc.*,
   2007 WL 1121739 (S.D.N.Y. Apr. 11, 2007) ......................................42

*In re Charles DeGennaro, III*,
   2020 WL 7231945 (S.D.N.Y. Dec. 8, 2020) ........................................39

*Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*,
   991 F.3d 361 (2d Cir. 2021) .................................................................46

*Kemp v. United States*,
   142 S. Ct. 1856 (2022) .........................................................................42

*King v. Allied Vision, Ltd.*,
   65 F.3d 1051 (2d Cir. 1995) .................................................................32

*Latino Officers Ass'n City of N.Y., Inc. v. City of New York*,
   558 F.3d 159 (2d Cir. 2009) ......................................................... 12, 32

*Liberty Propane L.P. v. Feheley*,
   522 Fed. App'x 38 (2d Cir. 2013) ........................................................35

iv

PAGE(S)

*Medallic Art Co., Ltd. v. Novus Marketing, Inc.*,
  2003 WL 2205313 (S.D.N.Y. Sept. 2, 2003) ......................................................32

*New York State Nat'l Org. for Women v. Terry*,
  886 F.2d 1339 (2d Cir.1989) .............................................................................32

*Oliveri v. Thompson*,
  803 F.2d 1265 (2d Cir.1986) .............................................................................47

*Ottaviani v. S.U.N.Y.*,
  875 F.2d 365 (2d Cir. 1989) ..............................................................................45

*Playboy Enters. Int'l, Inc. v. On Line Entm't, Inc.*,
  2004 WL 626807 (E.D.N.Y. Mar. 29, 2004) ................................................ 43, 45

*Residential Funding Corp. v. DeGeorge Fin. Corp.*,
  306 F.3d 99 (2d Cir. 2002) ........................................................................ 36, 41

*S. New England Tel. Co. v. Global NAPs Inc.*,
  624 F.3d 123 (2d Cir. 2010) ..............................................................................12

*Salovaara v. Eckert*,
  222 F.3d 19 (2d Cir. 2000) ........................................................................ 36, 41

*Spaulding v. New York City Dep't of Educ.*,
  407 F. Supp. 3d 143 (E.D.N.Y. 2017)................................................................43

*State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*,
  374 F.3d 158 (2nd Cir. 2004) ............................................................................43

## Statutes

28 U.S.C. § 1291 ...............................................................................................10

28 U.S.C. § 1331 ...............................................................................................10

v

PAGE(S)

**<u>Rules</u>**

Fed. R. App. P. 3(a) ...............................................................................11

Fed. R. Civ. P. 11 ...................................................................................27

**INTRODUCTION**

Appellant-Respondent Hui Qin[1] ("Qin") was held in contempt for violating an August 17, 2023 District Court order (the "August 17 Order") that he did not actually violate. Appellees-Petitioners ("Petitioners") and their counsel, Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury"), affirmatively misled the District Court into believing that Qin had violated the order. These misrepresentations improperly caused Qin to incur tens of thousands of dollars in legal fees and forensic expert fees that Qin is entitled to recover from Petitioners and Pillsbury.

Qin asks this Court to vacate the fraudulently-procured contempt finding in the August 17 Order and to reverse the District Court's subsequent refusal to reconsider that contempt finding as well as its order denying sanctions.

Petitioners are judgment creditors seeking to collect on an approximately $500 million judgment against Qin that was entered in October 2022. In connection with discovery proceedings in aid of enforcement of the judgment, Petitioners claimed that Qin had deleted relevant text messages from his two iPhones. In June, 2023, Petitioners filed a motion seeking, inter alia, to hold Qin in contempt for

---

[1] On November 28, 2023, Seiden Law LLP moved to withdraw as Qin's counsel in the District Court proceeding. *See Huzhou Chuangtai Rongyuan Investment Management Partnership et al v. Hui Qin*, 1:21-cv-09221-KFP, ECF 332. As of the date of this appeal brief, that motion remains pending. Irrespective of the outcome of the motion to withdraw, Seiden Law LLP intends to continue to represent Qin in this appeal, in order to avoid prejudice to Qin.

alleged discovery deficiencies. As relevant to this appeal, they sought an order "seizing and securing devices." JA-53.

At the August 17, 2023 hearing on the motion, the District Court granted that relief, ordering that Qin's two iPhones (one with a U.S. SIM card and one with a Chinese SIM card) be turned over to Petitioners' technician Tino Kyprianou "for imaging tonight." JA-937. While holding Qin's Chinese iPhone in the courtroom, the District Court instructed Qin and his counsel to "giv[e] [Mr. Kyprianou] the information that he *needs to access this[2]*," JA-938, including "the password that was used for this phone." *Id*. Pillsbury lawyer Andrew C. Smith clarified that Qin was being directed to provide "all necessary passwords, access codes." JA-941. The District Court responded that "[y]es . . . It's not worth it for him to have *the device* if he can't access *it*." *Id*. Mr. Kyprianou then asked "if there are any messages on the iCloud, then we need the password for that as well to access the iCloud." *Id*. The District Court ordered that "the iCloud passwords will be given in addition to the password to access the phone." JA-941-942.

Thus, the August 17 Order was confined by its terms to data *from the two iPhones*, whether located physically on the phones themselves or copied onto iCloud, the remote storage service that Apple provides to iPhone users for backing up data on their mobile devices. This plain reading of the August 17 Order was

---

[2] All emphasis is added unless otherwise noted.

confirmed by both Petitioners and the District Court in contemporaneous writings. In their contempt motion filed four days later on August 21, 2023 (the "Contempt Motion"), Petitioners described the August 17 Order as requiring that "Qin's telephones [] be turned over to a forensic specialist for imaging and preservation, including passwords and user ID's needed to preserve communications and other data on his telephone." CJA-1294. Three days later, on August 24, 2023, in granting Petitioners' motion, the District Court described the August 17 Order as "clearly instruct[ing] . . . [Qin] to provide 'all necessary passwords' requested by Petitioners' forensic specialist—'to give [him] the information that he needs' *to collect data from the phones*—explicitly naming 'iCloud passwords' as among such passwords." JA-833.

In compliance with the August 17 Order, Qin turned over both iPhones and provided the necessary passwords for all relevant accounts requested by Mr. Kyprianou on the same day. Mr. Kyprianou represented that the iPhones would be imaged and returned the following day. They were not returned. Instead, Petitioners and Pillsbury endeavored to use Mr. Kyprianou as a vehicle to demand passwords to any account they could identify from the data they had collected from the iPhones, regardless of whether those accounts had any data stored on the iPhones (or their iCloud backups) and regardless of whether those accounts even belonged to Qin. These included two Gmail accounts and a third address ending in icloud.com, two

of which Qin did not recognize, including one later determined to belong to the 10-year-old son of Qin's friend.

Pillsbury attorneys spent the following three days repeatedly representing to Qin's counsel that they would not return the iPhones because the lack of these three account passwords allegedly had prevented Mr. Kyprianou from "fully" imaging them. They instructed Mr. Kyprianou not to respond to direct questions from Qin's counsel asking him to confirm that these passwords were in fact needed to image the iPhones. Qin, for his part, did not object to providing these passwords. But his counsel reminded Pillsbury that they were in possession of Qin's only communication device and that he would need to have it back in order to ask around and identify these accounts and retrieve the passwords, which he did not know.

Rather than engage in any manner of good-faith meet-and-confer process to figure out how to obtain passwords that Qin had not refused to try and locate, Petitioners filed the Contempt Motion a mere four days after the August 17 Order, seeking Qin's imprisonment as a contempt sanction because Qin had purportedly "refused" to provide these passwords and had "blocked" Petitioners' ability to forensically image the iPhones. The Contempt Motion included, for example, the following statements:

- Qin "*blocked the full imaging of his phones*." CJA-1294.

- "As of today, *Petitioners have not been able to access the contents of Qin's phones*." *Id.*

4

- "Qin *has blocked full imaging of his phones . . .*" CJA-1295.

- "Unless and until Mr. Kyprianou is provided with the passwords to the following Gmail and iCloud accounts, *Mr. Kyprianou will not be able to finish imaging the data on the phones*." CJA-1307.

Mr. Kyprianou would later admit during a meeting—videorecorded at Pillsbury's demand—that he had not needed any of these passwords to forensically image or access any data either phone (or any iPhone data backed up to iCloud), and had in fact already made complete "logical" images of both phones the day after he took possession of them. The actual reason the phones had not been returned is that Pillsbury wanted to do a more extensive type of imaging known as a "device extraction" that required a software license that Mr. Kyprianou did not have, requiring the phones to be sent to laboratory in Los Angeles that did have the requisite license. During that same meeting, Pillsbury partner Hugh Ray admitted that he had been aware of this fact since before briefing on the Contempt Motion was completed. Also during that meeting, Mr. Kyprianou stated that he was not using the demanded Gmail passwords to collect any data from the phones or backed up from them. Indeed, neither phone had a Gmail application and neither was configured to download any email to it. Mr. Kyprianou instead was logging directly into Google servers—outside the scope of the August 17 Order—to download this data.

5

In other words, Petitioners' claim that Qin had "blocked" imaging of the phones—the entire basis of their motion—was completely false. None of this was corrected by Pillsbury attorneys before the District Court held Qin in contempt and ordering him imprisoned four days later if he did not supply the passwords, finding that he "continues to defy the Court's oral order of that date . . . by refusing to provide all passwords requested by Mr. Kyprianou *for the purposes of collecting data from his phones*." JA-832.

Upon learning this from Mr. Kyprianou, Qin sent Petitioners a letter demanding that they correct their falsehoods before the District Court, as well as reimburse Qin for all fees associated with the Contempt Motion. That letter was ignored. Qin then moved pursuant to Fed. R. Civ. P. 60(b)(1) and (3) to vacate the contempt finding and for sanctions against Petitioners and Pillsbury.

In response, Petitioners and Pillsbury contended that the Contempt Motion didn't actually mean what it said. They asserted for example that the Contempt Motion "did not request data on the devices—it expressly requested data contained in these accounts and not on the devices," and that this was "obvious to everyone, including the Court." JA-1096.

Incredibly, the District Court denied both the Rule 60(b) motion and the sanctions request, finding no mistake of fact and no false statements made.

6

Both of the District Court's orders were clearly erroneous and its denial of Qin's sanctions motion was a clear abuse of discretion. This Court must reverse them for the following reasons:

*First*, the contempt finding must be vacated because production of the three passwords at issue was not demonstrated by clear and convincing evidence to have been clearly and unambiguously compelled by the August 17 Order. A contempt order *cannot* issue absent such a finding. The August 17 Order was limited by its plain language to passwords necessary for collecting data *from the two iPhones*, an interpretation confirmed by contemporaneous statements of Petitioners and by the District Court. Petitioners appeared at the time to have satisfied this requirement by simply fabricating a claim that the passwords had been needed to image the phones, which has since been shown to be false. Petitioners have not otherwise provided any other evidence, let alone clear and convincing evidence, demonstrating that the passwords were necessary for collecting a single piece of data *from* the two iPhones, *wherever located*. Indeed, one of the accounts has since been determined to not even belong to Qin. Because the additional passwords were not actually required to access any data covered by the August 17 Order, the August 17 Order was not violated.

*Second*, even if the additional passwords arguably fell within the scope of the August 17 Order, a court may not issue a contempt sanction unless the moving party

further demonstrates by clear and convincing evidence that the alleged contemnor has not made reasonably diligent efforts to substantially comply. Petitioners never made any such showing. As with the first required prong, Petitioners attempted to satisfy it by simply fabricating a claim that Qin had "refused" to provide the passwords when he had never done so. Petitioners also misled the District Court into discounting the difficulty Qin faced in obtaining the passwords without his phone by again, lying about the reason they had withheld the phone and claiming it was because of misconduct by Qin. Moreover, Qin supplied all passwords to his iPhones and the only associated iCloud storage space on August 17, 2023. It was an abuse of discretion for the District Court to find that Qin's failure to provide three additional passwords *within four days* of issuance of the August 17 Order, *while Pillsbury was restraining under false pretenses his only communication device*, warranted a contempt finding. It was Pillsbury's own refusal to return the iPhones that caused a four-day delay in obtaining the passwords prior to filing the Contempt Motion, not a failure of reasonable diligence by Qin.

*Third*, there simply can be no dispute that the statements Pillsbury made to the District Court in the Contempt Motion regarding the ability to forensically image data from the iPhones—the *only basis* on which the District Court granted relief— were false and material. An allegation that Qin "blocked" the imaging of an iPhone means what it says. Mr. Kyprianou admitted on videotape that he had been able to

8

image both iPhones the day after he took possession of them *without* the demanded passwords. Qin's counsel watched him use the demanded Gmail passwords to access data that was *not* stored on the iPhones nor on the iCloud backups of those phones. Notably, not a single sentence written by Pillsbury attorneys since Mr. Kyprianou's disclosure has repeated these false claims.

On this appeal, Pillsbury should affirmatively represent whether its representations that Qin "blocked" the imaging of his phones were true. The record is clear that these representations were false. Petitioners' inability to image certain data—contrary to what Pillsbury attorneys represented to Qin's counsel and the District Court—had absolutely nothing to do with any action taken or not taken by Qin. Their claims otherwise were false and the District Court predicated its entire contempt finding on them. They are therefore "mistakes of fact" under Fed. R. Civ. P. 60(b)(1) and "misrepresentations" by an opposing party, as contemplated by Rule 60(b)(3).

*Finally*, the District Court's denial of Qin's request for sanctions must be either reversed outright or remanded for proper consideration. The only stated basis for the denial was the clearly erroneous finding that Petitioners had not made any false statements in the Contempt Motion. The District Court therefore did not evaluate whether Petitioners' conduct was vexatious, done in bad faith, or unnecessarily multiplied the proceedings. At a minimum, they frustrated Qin's

9

ability to provide the passwords and affirmatively lied to both Qin and the District Court as to why. Given that there can be no legitimate dispute that Petitioners predicated the Contempt Motion on knowingly false statements and have now refused to correct them for more than six months, this Court should find that such actions were done willfully and in bad faith and award Qin sanctions under its inherent contempt power and 28 U.S.C. § 1927.

## STATEMENT OF JURISDICTION

The District Court had subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the New York Convention (the "Convention"), a treaty of the United States. This Court has appellate jurisdiction under 28 U.S.C. § 1291 because the appeal is from a final order, namely a post-judgment contempt order, issued by the District Court, dated August 24, 2023. *See also Close-Up Int'l v. Berov*, 411 Fed. App'x. 349, 352 (2d Cir. 2010) ("where . . . 'civil contempt proceedings are instituted after the conclusion of the principal action rather than during the pendency of the action, the order disposing of the contempt proceedings is appealable' as a final decision of a district court under 28 U.S.C. § 1291.") (internal citations omitted).

This appeal is timely because the Notice of Appeal was filed on October 5, 2023 (JA-1186), which is within 28 days after the District Court denied Qin's motion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, which sought relief

from that order. JA-1181-1185; *see* Fed. R. App. P. 3(a).

## STATEMENT OF THE ISSUES

1.      Whether the District Court's August 17 Order requiring Qin to provide "all necessary passwords" to permit Petitioners "to collect data from [Qin's] phones" and their iCloud backups clearly and unambiguously required Qin to provide passwords for accounts that contained no data from Qin's phones?

2.      Whether Qin diligently attempted to comply with the August 17 Order by (i) providing Petitioners with all passwords needed to forensically image and access data stored on Qin's phones and their iCloud backups, and (ii) with respect to Petitioners' demand for passwords for accounts that contained no data from Qin's phones, by informing Petitioners that he would not object to providing or resetting those passwords but needed his cell phone to either contact others who knew the passwords or to reset the passwords?

3.      Whether, under the circumstances described in Questions 1 and 2, the District Court abused its discretion in holding Respondent in contempt, and ordering him to be imprisoned if he did not provide passwords for accounts that contained no data from Qin's phones, as demanded by Petitioners.

4.      Whether the District Court abused its discretion in denying Respondent's motion under Rule 60 of the Federal Rules of Civil Procedure to vacate the District Court's contempt order, given the evidence in the record that

11

Petitioners made materially false statements to the Court regarding whether the passwords they demanded pertained to data on Qin's phones?

5.      Whether the District Court abused its discretion in declining to sanction Petitioners, given the evidence in the record that Petitioners made materially false statements to the Court regarding whether the passwords they demanded pertained to data on Qin's phones?

## STANDARD OF REVIEW

This Court reviews "a finding of contempt under an abuse of discretion standard that is more rigorous than usual . . ." *S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 145 (2d Cir. 2010) (internal quotation marks omitted). In this context, this Court reviews conclusions of law *de novo* and factual findings for clear error. *F.T.C. v. BlueHippo Funding, LLC*, 762 F.3d 238, 243 (2d Cir. 2014) (citing *FTC v. Verity Int'l, Ltd.*, 443 F.3d 48, 63 (2d Cir. 2006)). "[W]hen a district court's ruling on a contempt motion is challenged on appeal, its interpretation of the terms of the underlying order or judgment is subject to *de novo* review. . ." *Latino Officers Ass'n City of N.Y., Inc. v. City of New York*, 558 F.3d 159, 164 (2d Cir. 2009).

This Court reviews the district court's denial of a Rule 60(b) motion under an abuse of discretion standard. *Canfield v. Van Atta Buick/GMC Truck, Inc.*, 127 F.3d 248, 249 (2d Cir. 1997).

12

A District Court's denial of a motion for sanctions is reviewed under an abuse of discretion standard. *Salovaara v. Eckert*, 222 F.3d 19, 27 (2d Cir. 2000).

## STATEMENT OF THE CASE

### Petitioners' Renewed Motion to Compel and the August 17 Order

On June 21, 2023, Petitioners filed their Renewed Motion to Compel, For Sanctions, and For an Order of Civil Contempt (the "Motion"). JA-73. The Motion sought spoliation sanctions in connection with Qin's purported deletion of text messages. CJA-17-21. It also requested entry of an order "seizing and securing devices." CJA-25. The Motion did not allege that any email had been spoliated, nor did it seek to forensically capture email from third-party providers' servers.

On August 17, 2023, the District Court held a hearing on the Motion. At the hearing, in accordance with the relief Petitioners had requested, the Court ordered that Qin's phones be handed over to Petitioners' forensic expert, Mr. Kyprianou, "for *imaging* tonight." JA-937 at 102:25; *see also* JA-938 at 103:12-14 ("which I can turn over to the gentleman from Setec for his *imaging*."); *see also id.* at 105:11-12 ("let me please understand the process by which this phone is *imaged*."); *see also id.* at 105:19 ("How long does the *imaging* process take?").

While holding Qin's Chinese iPhone in the courtroom, the District Court instructed Qin and his counsel to "giv[e] [Mr. Kyprianou] the information that he *needs to access this*," including "the password that was used for this phone." JA-

13

938. Pillsbury lawyer Andrew C. Smith clarified that Qin was being directed to provide "all necessary passwords, access codes." JA-941. The District Court responded that "[y]es . . . It's not worth it for him to have *the device* if he can't access *it*." *Id*.

Mr. Kyprianou stated that "if there are any messages on the iCloud, then we need the password for that as well to access the iCloud," JA-941, an apparent reference to Apple's "iCloud" service, which allows iPhone users to sync data from their iPhones or back up data from their iPhones.

The District Court did not order the production of data not contained on the iPhones or synced *from the phones* to iCloud. Nor did the District Court order the production of passwords to all email addresses that happened to end in "@icloud.com."

At the August 17 hearing, Mr. Kyprianou represented that the imaging process would require only a few hours. *See* JA-940-941 at 105:25-106:1.

**Qin's Compliance with the August 17 Order**

Qin's Chinese cell phone was provided to Petitioners for imaging during the August 17 hearing. That evening, in compliance with the Court's instructions, Qin's U.S. cell phone was also provided to Petitioners at Qin's counsel's office. Qin provided Mr. Kyprianou with the device passcode for his U.S. phone; the Chinese

14

phone was not password-protected. Nothing else was needed for Mr. Kyprianou to image either phone. JA-1064 ¶ 14.

In response to requests from Mr. Kyprianou, Qin also permitted Mr. Kyprianou to reset passwords to social media applications on Qin's U.S. phone so that Mr. Kyprianou would later be able to view text messages contained in the imaged data taken from the phone. JA-632 ¶¶ 24-25. There was no Gmail application on either phone, and neither phone was configured to download Gmail into any other email client application. JA-633 ¶ 26; JA-815 ¶ 2. In other words, there was no Gmail stored on the phones (and by extension, no Gmail data synced from the phones onto iCloud).

Mr. Kyprianou nevertheless tried to access Qin's Gmail (Karlqin5555@gmail.com) from a web browser and requested the password. JA-633 ¶ 26. Even though such data was outside the scope of the August 17 Order, Qin did not object to providing Mr. Kyprianou access to the account, but he did not know the Gmail password and was unable to reset it that evening because he did not have access to the password recovery email and phone number. *Id.* ¶¶ 26-28. Qin consented to his attorney sending a WeChat message—at Petitioners' request—from Qin's WeChat account to a friend he believed had the password. JA-685 ¶ 31. The WeChat message did not indicate that it had come from anyone other than Qin. *See id.*

15

Qin also allowed Mr. Kyprianou to reset the password for the only synced iCloud account that Mr. Kyprianou identified (Karlqin5555@icloud.com), which was linked to Qin's U.S. phone. JA-631 ¶¶ 20-21. Mr. Kyprianou stated at that time that the Chinese phone settings showed that it *had no iCloud account* linked to it where data would have been synced. JA-634 ¶ 29. Mr. Kyprianou said the phones would be returned the following day. *Id.* ¶ 31.

**Petitioners Withhold Qin's Phones and Demand Passwords to Three Accounts**

Late in the morning of Friday, August 18, the phones had still not been returned, notwithstanding Mr. Kyprianou's representation that the imaging process would take only a few hours. Accordingly, Qin's counsel followed up with Pillsbury by email to inquire about the phones' status. JA-601.

After receiving no response for five hours, Qin's counsel followed up again. *Id*. Pillsbury attorney Sarah Madigan responded, stating that "[s]earching Qin's phones" was taking longer than expected because the password to Qin's Gmail account (Karlqin5555@gmail.com) had not been provided and that "without it, we cannot access certain data stored on the phone or in the cloud." JA-652. Ms. Madigan's email further stated that "while reviewing" Qin's phones, "[Petitioners'] vendor identified an additional Gmail account . . . as well as a second iCloud account" (Sinuosiminghan@gmail.com and Qinhui198@icloud.com), and concluded that "[u]ntil our vendor is able to access both Gmail accounts and the

16

second iCloud account, he will retain the phones." JA-600. Ms. Madigan also disclosed that Qin's friend had responded to his WeChat message and sent what he believed to be the password for the Gmail account, but that it had not worked. *See* JA-599-600.

Given that no Gmail was stored on Qin's phones and that iCloud data is also not stored on phones, *see* JA-1065-1066 ¶¶ 18, 21, Qin's counsel asked both Pillsbury and Mr. Kyprianou why they needed to keep the phones on the basis that they lacked passwords to these three accounts. JA-583-585; JA-550, JA-595-596.

At no point did Qin refuse to provide (or work to reset) the passwords. To the contrary, Qin attempted to contact others in an effort to locate the passwords. Yet, as Qin's counsel repeatedly informed Pillsbury, Qin would have difficulty obtaining or resetting these additional passwords—including from his ex-wife, who at that time was in Europe—without access to the phones. JA-596-599.

For example, in one email exchange, Qin's counsel informed Petitioners that:

> [Qin] has continued to attempt to contact others to obtain the password to his Gmail account and tried to reset the password, but the fact that he does not have his phones makes that difficult, and you have no basis to treat third parties (such as his ex-wife Ms. Liu) as subject to his control.

JA-599. In subsequent filings, Pillsbury selectively quoted the end of the above-quoted sentence in support of a false contention that Qin was "refusing" to provide passwords. *See, e.g.*, CJA-1294 ("Qin refuses to arrange for [Ms. Liu] to assist in

17

resetting Qin's passwords, claiming that Petitioners 'have no basis to treat third parties (such as his ex-wife Ms. Liu) as subject to his control.'"); CJA-1302; CJA-1346; JA-1090; *see also infra* at 21.

Throughout the weekend of August 19-20, Pillsbury proceeded to repeatedly and falsely represent that they had been unable to image the phones without these passwords and needed to retain the phones for that reason:

- "We understand that Setec Investigations *has imaged the information on the phones which it has been able to access*. However, as we have repeatedly informed you, Setec Investigations *does not yet have access to the iCloud and Gmail accounts on Mr. Qin's phones* because he refuses to provide this information. *Because Mr. Qin has not provided his passwords, Setec is not able to complete the imaging process*. Moreover, given Mr. Qin's pattern of destroying and deleting information, *his devices will not be returned until he provides all passwords to Mr. Kyprianou and allows the full imaging of all information from Mr. Qin's phone*." JA-560.

- "We are therefore deeply concerned by Mr. Qin's attempts to get his phones back *without ever providing the password information needed to image all information on his phone*." JA-583.

- "The Court clearly authorized Setec Investigations to maintain possession of Mr. Qin's devices until Setec is able to gain full access to them and *preserve all data stored on those devices, including the iCloud and Gmail data*." *Id.*

Pillsbury also instructed Mr. Kyprianou not to answer whether he had been able to image the phones and told Qin's counsel that asking Mr. Kyprianou such questions was "inappropriate." JA-583-584.

By the following Monday, the phones had still not been returned. Qin's counsel again followed up with Pillsbury and also filed a letter with the Court

seeking relief. JA-595-596; JA-549-555. Within hours of that letter being filed, and with knowledge that (1) this data was neither stored on the phones nor in any synced iCloud repository, and (2) Qin had *never refused to provide the additional passwords* but had repeatedly told Petitioners that he needed his phones back to obtain them, Petitioners filed the Contempt Motion.

In the Contempt Motion, Petitioners contended (falsely) that they had been unable to image the phones because Qin had not provided passwords to three accounts (Sinuosiminghan@gmail.com, Karlqin5555@gmail.com, Qinhui198@icloud.com). CJA-1290-1315. For example, Petitioners contended:

- Qin "*blocked the full imaging of his phones.*" CJA-1294.

- "As of today, *Petitioners have not been able to access the contents of Qin's phones.*" *Id.*

- "Qin *has blocked full imaging of his phones . . .*" CJA-1295.

- "Petitioners respectfully request that this Court hold Qin in civil contempt and order him detained *until Qin provides all passwords and credentials needed to fully image Qin's phones.*" *Id.*

- "Unless and until Mr. Kyprianou is provided with the passwords to the following Gmail and iCloud accounts, *Mr. Kyprianou will not be able to finish imaging the data on the phones.*" CJA-1307.

- "Respondent was directed to turn over his cellular telephone and provide his passcodes and access information to each of his iCloud and email accounts so that Petitioners could efficiently gain access to the data and return the equipment to Respondent. There can be no dispute as to this Court's clear ruling that Qin must provide this data to Mr. Kyprianou. Despite this clear order, *within hours of the ruling, Qin flouted that ruling by refusing to*

19

*provide Petitioners' counsel or its forensic specialist with the necessary information to access the data on Qin's phones*." CJA-1312.

Petitioners provided no citations for most of these assertions, but for the penultimate one, Petitioners cited to paragraph 26 of a declaration submitted by Mr. Kyprianou. Paragraph 26, however, did not say that these passwords were needed to copy or access data on the phones nor any phone data synced to iCloud. CJA-1348 ¶ 26, which Petitioners would later admit. CJA-1095-1096.

The Contempt Motion further falsely stated that Qin had "refused" to provide the missing passwords:

- "Because Qin refused to give up passwords, attempted to prevent access to his phone, still refuses to cooperate with access, and has refused to turn over information this court ordered, Qin violated this Court's August 17 Order." CJA-1294.

- "Qin refused to provide passwords. Qin also refused to assist in resetting his passwords." *Id.*

- "Yet Qin refuses to arrange for her to assist in resetting Qin's passwords, claiming that Petitioners "have no basis to treat third parties (such as his ex-wife Ms. Liu) as subject to his control." *Id.*, *see also* 17, *supra* for full quote.

- "Qin thus simply refuses to comply with this Court's August 17 Order." CJA-1295

- "Qin Violated the Court's August 17 Order When He Refused to Allow Access to His Social Media, Cloud, and Email Accounts." CJA-1296 (emphasis in original)

- "Because Qin refused to provide his passwords, Mr. Kyprianou needed to reset Qin's passwords for his WeChat, Gmail, and iCloud accounts." CJA-1300.

20

- "Qin and his counsel refused Petitioners' request to communicate with Emma Duo Liu to arrange the resetting of Qin's password, writing: "[Petitioners] have no basis to treat third parties (such as his ex-wife Ms. Liu) as subject to his control." CJA-1302; *see* 17, *supra* for actual quote.

- "On August 19, Qin's counsel again demanded the return of Qin's phones but did not provide his passwords, and also refused to assist in resetting Qin's password." CJA-1303.

- "Qin refused to provide access to his Gmail account even though Qin accessed that account at least as recently as May." CJA-1304.

- "Although these accounts were responsive to Petitioners' numerous discovery requests, Qin had not disclosed these accounts previously to Petitioners and refuses to provide passwords." CJA-1307.

- "Respondent has refused to provide his passwords and continues to refuse to produce the information needed to gain access to each of his accounts consistent with the Court's ruling." CJA-1308.

In support of these false statements, Petitioners repeatedly cited to the parties' email correspondence over the prior weekend, misrepresenting Qin's request to have his phone returned *so he could obtain or reset these passwords*, as a refusal to provide them at all. They also falsely represented that passwords had needed to be reset because of a refusal to provide them, when in reality Qin did not know the passwords so allowed them to be reset. Petitioners later conceded that Qin had in fact never objected to providing these passwords. JA-1084, JA-1092.

Notwithstanding that the Contempt Motion was supported by multiple declarations, including one from a forensic expert, the District Court *gave Qin only*

21

*36 hours to respond*, leaving him unable to procure a responsive expert declaration. JA-607.

In his opposition to the Contempt Motion, Qin pointed out that Mr. Kyprianou's declaration did not support Petitioners' false claims that they were unable to image the phones and that Qin had refused to provide the additional passwords. JA-611. Yet Petitioners still did not correct these false claims in their reply brief, instead remaining silent on the issue while referring to Qin's counsel as "not" "a forensic expert." JA-827.

Petitioners also attached a second declaration from Mr. Kyprianou. Paragraph 7 of that declaration suggested (falsely) that additional passwords were necessary to access data residing on the phones:

> To clarify, the accounts qinhui198@icloud.com and sinuosiminghan@gmail.com are not simply web-based emails. They also represent the Apple IDs of the "Old" iPhone and they may contain data that needs to be examined. *Since I do not have the passwords for these IDs connected to the phone, I cannot fully analyze what data resided (or resides) on the phone under those IDs. It is possible that the other IDs could have other data that is not visible when reviewing the active Apple account controlling the device today.*

JA-816 ¶ 7. In actuality, "Apple IDs" are used for Apple's digital services like iTunes, Apple Pay and iCloud and do not affect, let alone obscure, data on an iPhone. JA-1065. ¶¶ 17, 18.

The above-quoted paragraph was cited in Petitioners' reply brief in support of the following (false) statement: "These accounts are obviously stored on Qin's phones." CJA-1365-1366.

Mr. Kyprianou's second declaration also stated, without explanation, that the phones had been sent to a lab in Los Angeles that same day—a week after they had been turned over to Petitioners—for "deeper" imaging. JA-815-816 ¶¶ 1, 8. It also stated that the phones were expected back a few days later, *id.*, an implicit admission that the requested passwords were not needed to image them because the lab would have not been able to send the phones back had the passwords really been needed to complete the imaging process.

## The District Court Adopts Petitioners' False Claims and Orders Qin Imprisoned If Additional Passwords Were Not Provided

In the District Court's August 24, 2023 order, the District Court reiterated that the August 17 Order was confined to data from the two iPhones. JA-832. It held, relying on Petitioners' false representations:

> Yet Respondent continues to defy the Court's oral order of that date (the "August 17, 2023 Order") by refusing to provide all passwords requested by Mr. Kyprianou *for the purposes of collecting data from his phones.*

JA-832.

In support of this conclusion, the District Court cited paragraph 26 of Mr. Kyprianou's first declaration (CJA-1344), and the paragraphs of Mr. Kyprianou's

23

supplemental declaration concerning the transfer of phones to the Los Angeles lab (JA-815-816 ¶¶ 1-8) as well as the false statement in paragraph 7 that additional passwords were necessary to access data that resided on the phones. *Id.* ¶ 7.

The District Court ordered that, unless Qin provided the passwords by August 28, 2023, he would be imprisoned. JA-834.

**Petitioners and Petitioners' Expert Admit that Petitioners' Claims Were False**

Facing potential imprisonment in less than a week, Qin diligently worked to try to obtain or reset the passwords.

Qin was able to determine that one Gmail account (Sinuosiminghan@gmail.com) belonged to his friend's 10-year-old son. JA-1019. The boy's parents provided his email password to Qin so that Qin would not go to jail. *Id.* Qin was also able to determine that a former employee at his company in Hong Kong had access to the iCloud account (Qinhui198@icloud.com), which appeared to be an old company account, and was eventually able to contact the employee in order to reset the password and provide it to Pillsbury. JA-1020-1021.

Qin's counsel meanwhile requested that his iPhones be returned to him as soon as they came back from the Los Angeles lab. JA-1018. Pillsbury refused this request, instead demanding that Qin and his counsel attend meetings at Pillsbury's offices with Mr. Kyprianou so that Mr. Kyprianou could control the process. *Id.* Pillsbury videorecorded these meetings. *Id.*

24

At the outset of the August 29, 2023 videorecorded meeting between the parties where this password recovery effort was scheduled to occur, Mr. Kyprianou admitted (in response to questioning from Qin's counsel, Amiad Kushner) that the phones had been completely imaged *without any of the passwords sought by the Contempt Motion*:

| | |
|---|---|
| MR. KUSHNER: | Mr. Kyprianou, have you at this point imaged the phones, or |
| MR. KYPRIANOU: | Yes. |
| MR. KUSHNER: | Ok. I mean is there any data from the phones that you haven't been able to image? I mean, I just want to, just want to make sure there's nothing out there that you haven't imaged. |
| MR. KYPRIANOU: | We did a logical as well as a physical, so |

JA-1044. After being provided with the missing Gmail passwords, Mr. Kyprianou also stated multiple times that he was going to obtain the Gmail data *not from the phones or from any synced iCloud phone data*, but rather from Google servers online, including:

| | |
|---|---|
| MR. KYPRIANOU: | If you try to sign in from a different device that Google doesn't recognize [*i.e.*, not the recognized phones], it will still ask you [for the verification code] . . . I can try with my laptop and you'll see. |

25

[…]

MR. RAY:    You're trying to access the Gmail account?

MR. KYPRIANOU:    The G Drive

*Id.* Throughout the August 29 meeting, Mr. Kyprianou attempted to access both Gmail and Google Drive data not from either iPhone or the iPhones' iCloud storage, but through the internet via Google's servers on his laptop, and is visible in the video using a USB drive to download data stored online from his laptop. *Id*. After Mr. Kyprianou went *online* to access one of the Gmail accounts (Sinuosiminghan@gmail.com, which belongs to a minor child not a party to and unrepresented in this action), Pillsbury partner Hugh Ray stated on the video that Mr. Kyprianou would "image that." *Id*. When Qin's counsel asked Mr. Ray whether Mr. Kyprianou was imaging data from Google servers (*i.e.*, *not* data from Qin's phones or their synced iCloud data), Mr. Ray responded simply that "He's doing what the Court ordered him to do. He's not here to be deposed." *Id.*

In a follow-up meeting on August 30, Pillsbury finally returned the phones and asked Qin's counsel to sign a chain-of-custody form. JA-1037 ¶ 13. That form indicated that Mr. Kyprianou had not in fact sent the phones to the Los Angeles lab before submitting a sworn declaration saying that he had. *Id.* When Qin's counsel noted this fact, Petitioners' counsel Mr. Ray stated that Petitioners had intended to

26

send the phones to the Los Angeles lab sooner, and that he "wish[ed]" that Petitioners had done so, indicating that the delay in sending the phones was Petitioners' fault, not Qin's, as Petitioners had falsely insinuated in their reply brief. JA-1367.

**Qin Notifies Petitioners of Their False Claims and Demands That Petitioners Correct the Record**

On August 31, 2023, Qin's counsel sent a letter to Petitioners' counsel, identifying Petitioners' false statements and reminding Petitioners' counsel of their obligations under N.Y. Rule of Professional Conduct 3.3 and Fed. R. Civ. P. 11 to correct these statements, noting that they had almost put a man in jail based on these false statements. JA-1046.  Qin's counsel also demanded reimbursement of all fees and costs that Qin had incurred in having to both litigate the false claims in the Motion as well as in having to comply with the August 24 Order that had been procured by fraud. *Id.* Petitioners did not respond to the letter and continued to mislead the District Court.  Qin's counsel also sent a notice of intent to seek sanctions under Fed. R. Civ. P. 11, but the mandatory 21-day safe harbor period had not elapsed before the District Court issued its order on the first sanctions motion. *Id*.

**Qin Moves to Vacate the August 24 Order and for Sanctions**

On September 8, 2023, Qin moved to vacate the August 24 order in part, and sought sanctions against Petitioners and Pillsbury for having made false statements

27

in the Contempt Motion and for filing it in bad faith. JA-977. Petitioners filed their opposition brief on September 22, 2023. JA-1078. In their Opposition, Petitioners made the incredible assertion that the statements in their Contempt Motion actually meant the opposite of what they said and disclaiming any insinuation that they had been seeking data from the iPhones:

- "[T]he relief Petitioners sought was obvious to everyone, including the Court: passwords corresponding to specific Gmail and iCloud accounts so Petitioners' forensic expert could "access the data" in those accounts (not merely data located on Qin's physical devices)." JA-1091.

- "The Order did not limit access to only data on the physical devices, and the Third Motion did not request data on the devices—it expressly requested data contained in these accounts and not on the devices." JA-1096 (compare *supra* at 6).

- "[Access to the device] . . . is not what Petitioners requested through their vendor, and the Court clearly did not rely on that purported "false" assertion . . . to grant Petitioners' relief in the Order." *Id.* (compare *supra* at 6).

- "Petitioners asked for 'data from remote servers and not to view or access data extracted from the device itself.'" JA-1071.

- "Petitioners did not dispute any "material facts" that Qin made in his Opposition, such as that Gmail resides in the cloud." JA-1098.

In other words, after repeatedly representing to Qin's counsel (in emails that were attached to the Contempt Motion) and the District Court (in the Contempt Motion) that additional passwords were necessary to image *the phones* and that Qin had "blocked" the imaging of *the phones* by refusing to provide those passwords, *see supra* at 4-9, and after the District Court granted their motion on that explicit

28

basis, Petitioners suddenly attempted to rewrite history, claiming that the Contempt Motion *never* contended that additional passwords were needed to access data on the phones and that this was "obvious" to the Court. JA-1140. Petitioners also conceded in their Opposition that Qin's counsel had never refused to turn over these additional passwords. JA-1146.

In support of Petitioners' Opposition, Mr. Kyprianou submitted yet another declaration, in which he admitted that the phones were sent to the Los Angeles lab because he did not have the necessary software license, not because of any action taken or not taken by Qin:

> [I]t was determined that a physical extraction was necessary. I was therefore instructed to proceed [with it]. My current Cellebrite license allows parsing and analysis of Cellebrite images but does not allow for physical extractions. An additional and much more expensive license is required. I therefore made arrangements with my firm Setec Investigations, which is based in Los Angeles CA, to ship the two iPhones for physical extractions. The two iPhones were shipped to a Los Angeles laboratory on August 24, 2023.[3]

JA-1124 ¶ 3.

Mr. Kyprianou further confirmed that the passwords sought in the Contempt Motion were *not* for any data stored on the phones or their synced iCloud data:

> [A]ccessing the iCloud and email accounts are a separate extraction than an extraction just from the device. My previous declarations to the Court made

---

[3] No copy of this form has ever been provided to Qin or his counsel.

29

> abundantly clear my attempts to access iCloud accounts
> and also the Gmail accounts *outside* the physical iPhones.

JA-1125-1126 ¶¶ 7-8. (emphasis in original).

Mr. Kyprianou at no point attempted to explain why he had said the exact opposite in Paragraph 7 of his second declaration. *Compare* JA-816 ¶ 7 ("Since I do not have the passwords for these IDs connected to the phone, I cannot fully analyze what data resided (or resides) *on the phone* under those IDs.") *with* JA-1125-1126 ¶ 8 ("My previous declarations to the Court made abundantly clear my attempts to access iCloud accounts and also the Gmail accounts *outside* the physical iPhones.") (emphasis in original).

In sum, Petitioners' statements in the Opposition directly contradicted their statements in the Contempt Motion. Petitioners' only explanation was that it was a matter of "semantics." JA-1096, JA-1103.

**The District Court Denies Qin's Rule 60(b) Motion**

On October 3, 2023, a day after Qin filed his reply brief, the District Court issued an order denying all relief. JA-1181-1185. The District Court stated that "[Qin's] interpretation of the August 17 Order as 'pertaining only to . . . data on Qin's phones and to their associated iCloud backups' is incorrect," JA-1183, because its inclusion of a requirement that "the iCloud passwords will be given in addition to the password to access the phone" "explicitly indicated that [the August 17] Order included passcodes that could give Mr. Kyprianou access to remotely-stored data."

30

*Id.* The District Court confirmed in the very next paragraph of its October 3, 2023 order that the August 17 Order had required provision of "'all necessary passwords' requested by Petitioners' forensic specialist—to giv[e] [Mr. Kyprianou] the information that he needs to collect data from the phones—explicitly naming 'iCloud passwords' as among such passwords." *Id.*

Ignoring that none of the three accounts upon which Petitioners had based their Contempt Motion was "from the phones" (either physically stored on the phones *or* on the "remotely-stored" synced iCloud data from those phones), the District Court proceeded to rely on its *August 24* Order requiring Qin to provide passwords for two of the accounts as somehow demonstrating that such accounts were within the scope of the *August 17* Order, stating that "[i]ndeed, the August 24 Order specifically named a Gmail account and an iCloud account belonging to Respondent as accounts for which Respondent was required to produce passwords pursuant to the August 17 Order." JA-1184.

Significantly, the Gmail account referenced in the August 24 Order *did not* "belong[] to Respondent" but rather to the minor child son of Qin's friend. *See* JA-843. The District Court in the October 3 Order also mischaracterized Qin's argument as claiming that the August 17 Order had been limited to the phones, utterly ignoring the inclusion of the remotely-stored iCloud data from the phones, and held that "[a]t no point did the Court endeavor to limit Petitioners' collection

efforts to data physically stored on the phones." JA-1184. On this basis, the District Court found no mistake of fact and further denied sanctions. *Id*.

## ARGUMENT

I.      THE DISTRICT COURT ERRED IN HOLDING QIN IN CONTEMPT

A.      **The August 17 Order Did Not Clearly and Unambiguously Require Production of Passwords for Accounts That Contained No Data from Qin's Phones**

A contempt order is warranted only where (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner. *King v. Allied Vision, Ltd.,* 65 F.3d 1051, 1058 (2d Cir. 1995) (citing *New York State Nat'l Org. for Women v. Terry,* 886 F.2d 1339, 1351 (2d Cir. 1989), *cert. denied,* 495 U.S. 947 (1990)). A clear and unambiguous order is one that is "specific and definite enough to apprise those within its scope of the conduct that is being [ordered]." *Medallic Art Co., Ltd. v. Novus Marketing, Inc.,* 2003 WL 22053139, at * 1 (S.D.N.Y. Sept. 2, 2003) (citing *New York State Nat'l Org. for Women v. Terry,* 886 F.2d 1339, 1352 (2d Cir.1989) (*cert. denied,* 495 U.S. 947 (1990)). It must leave "no uncertainty in the minds of those to whom it is addressed," *Hess v. New Jersey Transit Rail Operations, Inc.,* 846 F.2d 114, 116 (2d Cir. 1988), and its edicts must be able to be "ascertain[ed] from the four corners of the order . . . ." *King v. Allied Vision, Ltd.,* 65 F.3d 1051, 1058 (2d Cir. 1995) (quoting *Drywall*

32

*Tapers, Local 1974 v. Local 530, Operative Plasterers Int'l Ass'n,* 889 F.2d 389, 395 (2d Cir. 1989), *cert. denied,* 494 U.S. 1030 (1990)).

The District Court's interpretation of the terms of the August 17 Order is subject to *de novo* review. *Latino Officers Ass'n City of N.Y., Inc.*, 558 F.3d at 164.

Here, Petitioners were required to demonstrate by clear and convincing evidence that the August 17 Order clearly and unambiguously required Qin to provide passwords for three accounts (*i.e.*, Sinuosiminghan@gmail.com, Karlqin5555@gmail.com, Qinhui198@icloud.com) that Petitioners claimed were necessary for them to complete the imaging process. CJA-1294-1307. The record shows that the August 17 Order did not clearly and unambiguously require Qin to provide those passwords. The District Court's holding to the contrary was erroneous.

The August 17 Order by its express terms required Qin to turn over two iPhones to Petitioners' expert for forensic imaging, and to provide all passwords necessary to facilitate that process, including the passwords to any iCloud location where copies of the *data from those two iPhones* might have also resided. This plain reading of the transcript of the August 17, 2023 hearing is affirmed by both Petitioners' own description of the Order in the Contempt Motion ("Qin's telephones [] be turned over to a forensic specialist for imaging and preservation, including passwords and user ID's needed to preserve communications and other data on his

33

telephone") and the District Court's description of it in its August 24 Order ("clearly instruct[ing] . . . [Qin] to provide 'all necessary passwords' requested by Petitioners' forensic specialist—'to give [him] the information that he needs' *to collect data from the phones*—explicitly naming 'iCloud passwords' as among such passwords.").

It is also the only reading consistent with the relief that Petitioners had actually sought in the Motion that led to the August 17, 2023 hearing—an order "seizing and securing devices" on account of alleged text messages spoliated from Qin's cell phones.

Qin complied with the express terms of the August 17 Order by surrendering his two iPhones for imaging and by providing the password for his U.S. phone, which was the only password-protected phone, requested application passwords, and the password to the only iCloud account linked to either phone for purposes of syncing data. Nothing more was required in order for Petitioners to image the two phones or data from the phones.

The District Court's contempt finding is premised on the notion that the August 17 Order also required Qin to provide passwords to three more accounts (*i.e.*, Sinuosiminghan@gmail.com, Karlqin5555@gmail.com, Qinhui198@icloud.com). But the August 17 Order made no mention of these accounts. The District Court's contempt finding is proper only if it clearly and unambiguously required Qin to provide those passwords.

In this respect, it is significant that this Court has been very exacting in analyzing whether a court order specifically compelled or prohibited a particular act. For example, in *Chevron Corp. v. Donziger*, 990 F.3d 191, 212 (2d Cir. 2021), the defendant had been held in contempt for selling third parties' interests in an underlying judgment in order to fund his litigation after he was ordered not to "sell[], assign[] or borrow on their interests in the . . . judgment." The Second Circuit reversed, finding that the order had not prohibited defendant from selling *any* interest in the judgment, but rather that the word "their" "suggest[ed]" that he "could sell other interests, just not his own."

Similarly, in *Liberty Propane L.P. v. Feheley*, this Court held that it was an abuse of discretion to enter a contempt order against a defendant who had not produced promissory notes memorializing his debts to a specific third party. 522 Fed. App'x 38, 39 (2d Cir. 2013). The order required the defendant to "set forth by affidavits and documents the legal and personal relationship between himself and [the third party] as well as the specific reasons the above sum was endorsed over to her," but this Court held that the order did not expressly require the defendant "to produce all relevant documents, or the promissory notes specifically." *Liberty Propane L.P. v. Feheley*, 522 Fed. App'x 38, 39 (2d Cir. 2013). In *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 143–44 (2d Cir. 2014), a contempt finding was vacated where a defendant had been ordered to produce documents pertaining to "all

35

defendants," and had not produced such documents with respect to later-added defendants in the case. This Court stated that the new defendants were "not clearly and unambiguously included in the definition of 'Defendants' in the [original order]." *Id.*

Here, the August 17 Order did not expressly require Qin to provide *any and all* passwords requested by Mr. Kyprianou *for any reason whatsoever*. Rather, by its own terms, the August 17 Order was confined to passwords requested to facilitate the collection of data *from the phones*.

At the time the August 24 Order was issued, the District Court stated that the August 17 Order had been violated because Qin allegedly "refus[ed] to provide all passwords requested by Mr. Kyprianou *for the purposes of collecting data from his phones.*" JA-843. That finding was the direct result of the District Court adopting the unsupported "facts" alleged by Petitioners in the Contempt Motion that these passwords had been necessary to image the iPhones. Petitioners' expert has since admitted on videotape that those claims were false; indeed, Petitioners successfully imaged Qin's phones without the passwords which they told the District Court were needed to image the phones. CJA-1294-1307. Pillsbury attorney Hugh Ray has also since admitted, not on videotape, that those claims were false. A-1044. No Pillsbury attorney has yet admitted to the District Court that those claims were false, but such an admission can be inferred from the fact that Pillsbury did not repeat those claims

36

in their Rule 60(b) briefing and that they instead claimed they had never made such a claim at all.  *See* 30, *supra.*  Given that it is *not* the case that the passwords were needed to collect data from either iPhone, the District Court's August 24 contempt finding based solely on that erroneous belief was an abuse of discretion. *See Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) ("A district court would necessarily abuse its discretion if it based its ruling . . . on a clearly erroneous assessment of the evidence.").

Without their false claim that the passwords were needed to image data (whether on the devices or on iCloud) *from* the iPhones, Petitioners were required to otherwise show by clear and convincing evidence that the passwords were necessary to "collect[] data from the phones" before any violation of the August 17 Order could be established.  They never have.  Petitioners argued in their Rule 60(b) opposition that the August 17 Order had not been limited to data stored only on the phones, and therefore Qin's failure to provide passwords for "remotely-stored data" was within its scope.

The District Court accepted this argument in its October 3 denial of Qin's Rule 60(b), noted that its August 17 Order had contemplated both data stored on the iPhones as well as "remotely-stored data," JA-1183, and therefore passwords requested by Mr. Kyprianou for remotely-stored data were within the August 17 Order.  The District Court did not even consider the fact that one of the email

37

addresses had been subsequently shown to not even belong to Qin. More importantly, however, its ruling in effect read the words "for the purposes of collecting data from the phones" entirely out of the August 17 Order. This is legally insufficient. The August 17 Order required production of passwords requested by Mr. Kyprianou for a particular purpose—to facilitate collecting data from the phones. To this day, Petitioners have never demonstrated that any data *from* the phones required these passwords.

Finally, it was an abuse of discretion for the District Court to predicate its refusal to vacate the contempt order by pointing to its August 24 order. As noted above, whether an order is clear and unambiguous must be ascertained "from the four corners" of that order. The District Court's subsequent pronouncement that Qin would be required to produce additional passwords is therefore legally irrelevant to whether the original order clearly and unambiguously compelled their production.

### B.    The District Court's Determination that Qin Had Not Substantially Complied Was Clearly Erroneous

Even if there were a colorable argument that the August 17 Order required Qin to produce three passwords for accounts that were never shown to contain data from the iPhones, the District Court should not have entered a contempt finding unless Petitioners established by clear and convincing evidence that Qin had "not diligently attempted to comply in a reasonable manner." *CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 98 (2d Cir. 2016).

38

However, the District Court never addressed in its orders in any detail why Qin's surrender of his phones for imaging, his provision of all passcodes required to access the phones as well as the password for the iCloud backup for his U.S. phone, and of the passwords to his social media applications, did not constitute a diligent attempt to comply in a reasonable manner. Nor has the District Court ever addressed why the failure to provide three additional passwords within four days' time indicated that Qin was not making a diligent attempt. A *de minimus* delay is not a basis for a contempt finding. *In re Charles DeGennaro, III*, 2020 WL 7231945, at *10 (S.D.N.Y. Dec. 8, 2020) ("very short duration of noncompliance" with a court order counseled in favor of finding abuse of discretion to award contempt sanctions when party had failed to produce documents by nine days after a court-ordered deadline).

Qin repeatedly advised Petitioners and the District Court that he needed his iPhones back in order to obtain the additional passwords, and that Pillsbury's retention of the phones was unjustified and both factually and legally questionable. Even in light of Pillsbury's admission that it *had* been able to image both of the iPhones, the District Court has never once responded to Qin's claim that Pillsbury's retention of the iPhones was improper and based on false pretenses, nor addressed whether it was reasonable to demand that Qin obtain the passwords without access to his cell phone. Indeed, consistent with his representations that he needed his

phones to access his contacts and confer with others to find the passwords, he was able to obtain the passwords (or reset them with others' help) within days of purchasing a new iPhone. JA-1010-1021.

Petitioners contended that Qin was "refusing" to provide the passwords, contrary to the actual evidence. *See* 18, *supra*. They also described Qin as "belligerent" *while he was turning over requested passwords*, a statement the District Court specifically referenced in its contempt finding, *see* JA-831-835, and otherwise referred to a prior contempt finding against Qin. At the time the Contempt Motion was filed, Qin had argued that he had told Petitioners that he needed his iPhones back to obtain these passwords, but the District Court had been falsely told by Petitioners that they could not return the iPhones because Qin had "blocked" their ability to forensically image them.

It is now clear, as Petitioners' expert has admitted, that their retention of the iPhones was based on their own failure to secure a software license rather than any action taken by Qin. Thus, Petitioners can no longer point the finger at Qin and say that his inability to obtain the passwords was caused by anything other than their own misconduct. Where a party cannot comply with a court-ordered deadline, that party may "present substantial justification for its failure to disclose and thereby avoid contempt sanctions." *First Am. Corp. v. Price Waterhouse LLP,* 154 F.3d 16, 22 (2d Cir. 1998) (internal quotation marks omitted). Pillsbury's deliberate

40

misrepresentations and improper confiscation of the iPhones under false pretenses is such a substantial justification.

As with the question of whether Qin violated the August 17 Order, the District Court's finding that Qin had not made a diligent attempt to reasonably comply was predicated on incorrect factual findings based on false statements made by Pillsbury attorneys. As such, it constituted an abuse of discretion. *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) ("A district court would necessarily abuse its discretion if it based its ruling . . . on a clearly erroneous assessment of the evidence.").

## II. THE DISTRICT COURT ABUSED ITS DISCRETION IN NOT VACATING THE CONTEMPT FINDING UNDER RULE 60(B)(1) AND (3)

Notwithstanding that (i) Petitioners' forensic expert admitted on videotape that he had imaged the iPhones without any of the supposedly necessary passwords, (ii) Pillsbury's partner Hugh Ray admitted that he knew—before briefing on the Contempt Motion was complete—that the reason the iPhones could not be imaged was a software license problem and not any action by Qin, (iii) Pillsbury nevertheless failed to correct their false claims in their reply brief on the Contempt Motion and allowed the District Court to continue to believe that Qin had "blocked" the imaging of his iPhone data, and (iv) Pillsbury's Rule 60(b) opposition brief took the nonsensical position that Petitioners never sought any data on the physical devices—

41

contrary to the entire gravamen of their original Contempt Motion, the District Court somehow managed to find that not a single false statement had been made in the Contempt Motion. JA-1181-1186. Such a finding simply cannot be based on any fair interpretation of the evidence.

The District Court noted that the Contempt Motion made oblique reference to "remotely-stored data" and that the August 17 Order contemplated "remotely-stored data." JA-1183. This statement omits a necessary limitation of the August 17 Order's application to "remotely-stored data"—namely that such data be necessary for the collection of data *from the phones*. Moreover, the Contempt Motion never argued that the August 17 Order concerned remotely-stored data that was not backed up from the iPhones. The Contempt Motion never argued that Qin had violated the August 17 Order because he had failed to provide passwords to remotely-stored data that was not backed up from the iPhones. Rather, the Contempt Motion was predicated on a single argument: that the August 17 Order had compelled Qin to supply all necessary passwords to collect data from the iPhones, and that Qin had "blocked" Petitioners' ability to image the iPhones. The District Court adopted that argument and used it as the explicit basis for its contempt finding.

Rule 60(b)(1) "affords a party relief from a material mistake that changed the outcome of the court's judgment." *In re Bulk Oil (USA), Inc.,* 2007 WL 1121739, at *10 (S.D.N.Y. Apr. 11, 2007). It permits the Court to correct its own errors of both

42

fact and law. *Kemp v. United States*, 142 S. Ct. 1856, 1862 (2022); *see also In re 310 Assocs.*, 346 F.3d 31, 34-35 (2d Cir. 2003).

Rule 60(b)(3) allows a district court to relieve a party from an order where the adverse party has committed "fraud ... misconduct or misrepresentation." *Spaulding v. New York City Dep't of Educ.,* 407 F. Supp. 3d 143, 149 (E.D.N.Y. 2017) (internal citation omitted). To succeed on a Rule 60(b)(3) motion, the moving party must demonstrate by clear and convincing evidence that the non-moving party engaged in fraud, misrepresentation or other misconduct, *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 176 (2d Cir. 2004), which prevented the moving party from "fully and fairly presenting" its case, *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 286 F. Supp. 2d 309, 312 (S.D.N.Y. 2003). "Rule 60(b)(3) is typically invoked where material information has been withheld or incorrect or perjured evidence has been intentionally supplied." *Playboy Enters. Int'l, Inc. v. On Line Entm't, Inc.,* 2004 WL 626807, at *10 (E.D.N.Y. Mar. 29, 2004) (internal quotation marks removed), as amended (Apr. 1, 2004), *aff'd*, 135 F. App'x. 479 (2d Cir. 2005). If the misconduct was intentional, "the movant is entitled to a presumption that the misconduct substantially interfered with the movant's preparation of its case ... [which] may only be overcome by clear and convincing evidence to the contrary." *Id*. (internal citation omitted). "If, on the other hand, the moving party proves no more than that the misconduct is accidental or inadvertent,

43

the moving party must carry the burden of proving substantial interference by a preponderance of the evidence." *Id.* To establish substantial interference with the movant's ability to fully and fairly present its case, the moving party need not show that the outcome would have been different absent the misconduct. *Catskill Development, L.L.C. v. Park Place Entertainment Corp.*, 286 F. Supp. 2d 309, 316 (S.D.N.Y. 2003). As such, the District Court's October 3 determination that Qin had violated the August 17 Order for different reasons did not negate Qin's entitlement to relief under this section.

Substantial interference is established "if a party shows that the concealment precluded inquiry into a plausible theory of liability, denied it access to evidence that could well have been probative on an important issue, or closed off a potentially fruitful avenue of direct or cross examination." *Id.* (internal citation omitted). Pillsbury's retention of the phones under false pretenses was substantial interference.

Here, August 24 contempt finding should have been vacated on multiple grounds. The District Court's decision to the contrary was an abuse of discretion.

Preliminarily, the District Court's August 24 contempt finding stated in very clear language that it was based on its determination that Qin had violated the August 17 Order by preventing Petitioners from "collecting data from the phones." JA-1183. There was no question, and Petitioners did not dispute in their Rule 60(b) opposition, that this was a clearly erroneous finding, or in other words, a mistake of fact. *See*

44

*supra*, at 41-45. The contempt finding should have been vacated for this reason alone.

Indeed, in their Rule 60(b) opposition, Petitioners claimed, nonsensically, that the Contempt Motion "did not request data on the devices—it expressly requested data contained in these accounts and not on the devices." Yet Petitioners cannot wash their hands of the fact that they procured a contempt finding based on their repeated false representations that Qin "blocked the full imaging of his phones," as well as their repeated false statements to Qin's counsel that they would not return the phones because they had been unable to fully image them. Petitioners maintained this fiction even after their own expert, Mr. Kyprianou, admitted that the phones had been imaged without the passwords.

There also can be no dispute that Petitioners' false evidence (that Qin had blocked the imaging of the phones) was "intentionally supplied." *Playboy Enters. Int'l, Inc.,* 2004 WL 626807, at *10. Petitioners retained an expert who no doubt knew that these passwords were not necessary to image the phones, and Pillsbury partner Hugh Ray admitted that Pillsbury knew that these statements were false before August 23, 2023, before Pillsbury filed its reply brief on the Contempt Motion in which it made a decision to not correct or withdraw any of these false statements.

This Court must reject findings by a district court when left with the "definite and firm conviction that a mistake has been committed." *Ottaviani v. S.U.N.Y.*, 875

45

F.2d 365, 375 (2d Cir. 1989) (quoting *U.S. v. U.S. Gypsum Co.,* 333 U.S. 364, 395 (1948)).  The District Court's determination that no false statements were made in the Contempt Motion, contradicted by all available evidence and rebutted by Petitioners' own arguments in the Rule 60(b) briefing that the words in their Contempt Motion meant something different than what they said, requires this Court to reject the District Court's conclusion.

## III.   THE DISTRICT COURT'S DENIAL OF SANCTIONS WAS A CLEAR ABUSE OF DISCRETION

A court's inherent power "allows it to impose monetary sanctions against a litigant (or its counsel) for misconduct." *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.,* 991 F.3d 361, 367 (2d Cir. 2021) (internal citation omitted).  "Such an award serves two ends: it 'vindicat[es] judicial authority' and it makes the wronged party 'whole for expenses caused by his opponent's obstinancy.' *Id.* (quoting *Hutto v. Finney*, 437 U.S. 678, 689 n.14 (1978)).  Such misconduct is properly sanctioned when it demonstrates "bad faith, vexatious[], or wanton[]" acts or actions otherwise undertaken for "oppressive reasons." *Id.*  The Second Circuit has found it "often deserving of sanction" when a party prosecutes a claim that lacks any legal or factual basis and where it is motivated by improper purposes such as harassment. *Id.* Improper purpose may be inferred when an action is "so completely without merit as to require the conclusion that [it] must have been undertaken for some improper purpose." *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 143 (2d Cir. 2012). Even

46

a single bad-faith filing is sufficient. *Huebner v. Midland Credit Mgmt.*, 897 F.3d 42, 57 (2d Cir. 2018).

A court may also sanction an attorney *and the attorney's firm* under 28 U.S.C. § 1927 for bad faith conduct that vexatiously multiplies the proceedings. *See Apex Oil Co. v. Belcher Co.,* 855 F.2d 1009, 1019–20 (2d Cir.1988). The showing of bad faith required to support sanctions under 28 U.S.C. § 1927 is "similar to that necessary to invoke the court's inherent power." *Oliveri v. Thompson,* 803 F.2d 1265, 1273 (2d Cir.1986). In practice, "the only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is ... that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both." *Enmon,* 675 F.3d at 143–44.

Petitioners' and their counsel's conduct since August 17, 2023 more than satisfies this standard. They knowingly advanced false claims to the District Court for the improper purpose of obtaining data that was not encompassed by the August 17 Order, and demanded that Qin be imprisoned if he did not provide it. They deliberately frustrated his ability to obtain the requested passwords by refusing to return his phones under false pretenses, then turned around and asserted that his inability to obtain any passwords while Pillsbury was withholding the phones was a further basis to hold him in contempt.

47

The Contempt Motion was improper. Simply put, the motion sought sanctions based on a representation (that Qin blocked the imaging of his phones by failing to provide passwords) that Petitioners knew was false. That Petitioners requested Qin's imprisonment makes it even more unjustifiable. To the extent the motion sought to compel production of passwords, it was also unnecessary and vexatious, because Qin had *not objected* to providing them once he had his phones back, and only four days had elapsed since Petitioners had demanded them.

Qin is entitled to be compensated for the cost of defending himself against Petitioners' false accusations as well as the time and expense that was incurred in attending unnecessary videotaped meetings at Pillsbury's office because of their retention of his phones under false pretenses. Given that the District Court's denial of Qin's sanctions motion was solely predicated on the clearly erroneous finding that the Contempt Motion contained no false statements, it must be revisited. The motion should therefore be remanded to the District Court with instructions to consider whether Petitioners' and Pillsbury's demonstrably false representations warrant a sanctions award.

## CONCLUSION

The contempt order of the District Court should be vacated and the case should be remanded with instructions that the District Court should award appropriate sanctions for Petitioners' and Pillsbury's misconduct.

48

Dated: January 17, 2024

Respectfully submitted,

/s/ Jennifer Blecher
AMIAD M. KUSHNER
JENNIFER BLECHER
XINTONG ZHANG
SEIDEN LAW LLP
322 Eighth Avenue, Suite 1200
New York, New York 10001
(646) 766-1914

*Attorneys for Respondent-Appellant*

49

**Certificate of Compliance**

This document complies with the limits of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts exempted by Fed. R. App. P. 32(f), this document contains 11,634 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally-spaced font using Microsoft Word 2010, namely, Times New Roman, font size 14.

Dated:          New York, New York
                    January 17, 2024

/s/ Jennifer Blecher
Jennifer Blecher

# SPECIAL APPENDIX

## TABLE OF CONTENTS

Order (Denying Respondent's
    Motion to Vacate in Part and Modify in Part
    the Court's August 24, 2023 Order and
    for Sanctions Against Petitioners and Their Counsel),
    dated October 3, 2023 ................................................................................... SPA-1

Respondent Hui Qin's Notice of Appeal,
    dated October 5, 2023 .................................................................................... SPA-6

**SPA-1**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HUZHOU CHUANGTAI RONGYUAN INVESTMENT MANAGEMENT PARTNERSHIP, HUZHOU HUIHENGYING EQUITY INVESTMENT PARTNERSHIP, and HUZHOU HUIRONGSHENG EQUITY INVESTMENT PARTNERSHIP, | 21 Civ. 9221 (KPF) |
| Petitioners, | **ORDER** |
| -v.- | |
| HUI QIN, | |
| Respondent. | |

KATHERINE POLK FAILLA, District Judge:[1]

On August 24, 2023, this Court found Respondent Hui Qin to be in contempt of its August 17, 2023 Order (August 17, 2023 Minute Entry (the "August 17 Order")) and sanctioned Respondent to arrest and confinement if he did not produce the passwords requested by Petitioners' forensic expert, Tino Kyprianou, for the purposes of collecting information from Respondent's phones, as required by the August 17 Order. (Dkt. #243 (the "August 24 Order") at 3-4). Respondent now seeks relief from the Court's August 24 Order pursuant to Federal Rules of Civil Procedure 60(b)(1) and 60(b)(3) on the grounds that the Court's August 24 Order was predicated on "Petitioners' deliberate misrepresentations to this Court." (Resp. Br. 3). According to

---

[1]    For ease of reference, the Court refers to Respondent's memorandum of law in support of his motion for relief as "Resp. Br." (Dkt. #272); to Petitioners' memorandum of law in opposition to Respondent's motion as "Pet. Opp." (Dkt. #289); and to Respondent's reply memorandum of law in further support of his motion as "Resp. Reply" (Dkt. #297). The Court refers to the transcript of the Court's August 17, 2023 hearing as "Tr." (Dkt. #249).

## SPA-2

Respondent, relief is warranted "because the 'facts' the Court adopted in the August 24 Order were demonstrably false and fraudulently advanced by Petitioners." (Resp. Reply 5). Respondent also seeks sanctions against Petitioners and Petitioners' counsel in connection with these events.

In this Circuit, relief under Rule 60(b) is considered "extraordinary," *Paddington Partners* v. *Bouchard*, 34 F.3d 1132, 1142 (2d Cir. 1994), and "is generally not favored," *Sec. & Exch. Comm'n* v. *Allaire*, No. 03 Civ. 4087 (DLC), 2019 WL 6114484, at *2 (S.D.N.Y. Nov. 18, 2019) (quoting *Ins. Co. of N. Am.* v. *Pub. Serv. Mut. Ins. Co.*, 609 F.3d 122, 131 (2d Cir. 2010)), *aff'd sub nom. Sec. & Exch. Comm'n* v. *Romeril*, No. 19-4197, 2021 WL 4395250 (2d Cir. Sept 27, 2021) (summary order). Accordingly, Rule 60(b) "may only be invoked if the moving party [can demonstrate] exceptional circumstances" meriting such extraordinary relief. *Paddington Partners*, 34 F.3d at 1142.

Each subsection of Rule 60(b) delineates a specific set of circumstances under which a court may consider a grant of relief from a prior order or judgment. A motion for relief under Rule 60(b)(1) must be predicated on "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1), including "a judge's errors of law," *Kemp* v. *United States*, 142 S. Ct. 1856, 1860 (2022). A motion for relief under Rule 60(b)(3) requires a showing of "fraud[,] … misrepresentation, or misconduct by an opposing party," Fed. R. Civ. P. 60(b)(3), and, more specifically, "clear and convincing evidence of [the opposing party's] material misrepresentations." *Bell* v. *Carson*, No. 19-3461, 2021 WL 4022726, at *1 (2d Cir. Sept. 3, 2021) (summary order); *see generally*

2

## SPA-3

*Geo-Grp. Commc'ns, Inc.* v. *Chopra*, No. 15 Civ. 1756 (KPF), 2023 WL 6235160, at *6 (S.D.N.Y. Sept. 26, 2023).

The instant motion presents no such set of circumstances. As an initial matter, Respondent's interpretation of the August 17 Order as "pertain[ing] only to imaging data on Qin's phones and to their associated iCloud backups" is incorrect. (Resp. Br. 3). The August 17 Order compelled Respondent to provide Petitioners with "all . . . passwords [and] access codes" that Mr. Kyprianou requested to enable him to collect information from the phones. (Tr. 106). The Court further clarified that it "expect[s] that the iCloud passwords will be given in addition to the password to access the phone" — that is, the Court explicitly indicated that its Order included passcodes that could give Mr. Kyprianou access to remotely-stored data. (*Id.* at 106-07).

In its August 24 Order, the Court reaffirmed the breadth of its August 17 Order, rejecting Respondent's argument that the passwords requested by Petitioners were "mostly outside the scope of the Court's recent order because none of these passwords pertain to data on his cell phones." (Dkt. #231 at 3; Dkt. #243 at 3 ("[In its August 17, 2023 Order,] the Court clearly instructed Respondent to provide 'all necessary passwords' requested by Petitioners' forensic specialist — 'to giv[e] [Mr. Kyprianou] the information that he needs' to collect data from the phones — explicitly naming 'iCloud passwords' as among such passwords." (quoting Dkt. #240 at 1-2))). Indeed, the August 24 Order specifically named a Gmail account and an iCloud account belonging to Respondent as accounts for which Respondent was required to produce

passwords pursuant to the August 17 Order (Dkt. #243 at 4 n.2), which accounts the Court recognized as capable of providing access to remotely-stored data, consistent with the Declaration in Support of Petitioners' Third Motion to Compel submitted by Mr. Kyprianou (Dkt. #227 ¶ 26 ("To be able to capture the data from the Gmail and iCloud accounts listed below I need the passwords[.]")). At no point did the Court endeavor to limit Petitioners' collection efforts to data physically stored on the phones; the Court rejects Respondent's argument that the statements cited by Respondent from the Court's August 17, 2023 hearing suggest as much. (*See* Resp. Br. 6).

Further, the Court cannot conclude that, in the wake of the Court's August 17 Order, Petitioners misleadingly claimed that "that they only sought information on Qin's physical devices and needed the passwords for that." (Pet. Opp. 10). Petitioners repeatedly expressed their intent and detailed their efforts to "access and image Qin's email and iCloud accounts" (Dkt. #223 at 10), as well as their belief that the Court's August 24 Order permitted them to do so (*id.* at 15 ("[T]his Court . . . requir[ed] Qin to turn over his cellular telephone so that the forensic specialist Mr. Kyprianou could obtain full access and preserve what remains of Qin's social media, email and iCloud data.")).

For these reasons, the Court finds that there has been no mistake of fact or law, and Respondent has not presented the circumstances requisite to Rule 60(b)(1) or 60(b)(3) relief. Accordingly, Respondent's motion for Rule 60(b) relief from the Court's August 24 Order is DENIED. Consistent with this finding, the Court further DENIES Respondent's motion for sanctions against Petitioners

4

and their counsel.  Finally, as enumerated in the Court's August 24 Order, the

Court expects that any information gathered from Respondent's phones shall

not be searched or accessed by Petitioners until an appropriate search protocol

is implemented to limit any production to relevant, non-privileged information.

The Clerk of Court is directed to terminate the motion at docket entry

271.

SO ORDERED.

Dated:   October 3, 2023
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

**SPA-6**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

Huzhou Chuangtai Rongyuan Investment   :
Management Partnership, Huzhou Huihengying :
Equity Investment Partnership, and Huzhou  :  1:21:cv-09221-KPF
Huirongsheng Equity Investment Partnership, :
                :
        Petitioners,    :
                :
    -v.-          :
                :
Hui Qin,            :
                :
        Respondent.   :
                :

-------------------------------------------------------------------x

## NOTICE OF APPEAL

Notice is hereby given that Respondent Hui Qin hereby appeals to the United States Court of Appeals for the Second Circuit from the order entered by this Court on August 24, 2023 (ECF Doc. No. 243) (the "Contempt Order"), granting Petitioners' Third Motion to Compel and for Contempt, as well as this Court's order entered on October 3, 2023 (ECF Doc. No. 298) denying Respondent's motion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure for relief from the Contempt Order.

Dated: October 5, 2023

           Respectfully submitted,

           SEIDEN LAW LLP

           By:  /s/ Amiad Kushner
              Amiad Kushner
              Jennifer Blecher
              Xintong Zhang
              322 Eighth Ave, Suite 1200
              New York, NY 10001
              646-766-1914
              akushner@seidenlaw.com

**SPA-7**

jblecher@seidenlaw.com
xzhang@seidenlaw.com

*Counsel for Respondent Hui Qin*


Cc:

Andrew C. Smith (andrew.smith@pillsburylaw.com)
Geoffrey Sant (geoffrey.sant@pillsburylaw.com)
Carol Lee (carol.lee@pillsburylaw.com)
PILLSBURY WINTHROP SHAW PITTMAN LLP
31 West 52nd Street
New York, New York 10019
Tel: (212) 858-1000
Fax: (212) 858-1500

*Counsel for Petitioners Huzhou Chuangtai*
*Rongyuan Investment Management*
*Partnership, Huzhou Huihengying Equity*
*Investment Partnership, and Huzhou*
*Huirongsheng Equity Investment Partnership*

**SPA-8**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of October 2023, copies of the foregoing

Notice of Appeal were served via the Court's CM/ECF system to all counsel and parties

receiving electronic notice of pleadings filed in this case.

By:   ___/s/ Xintong Zhang_____
Xintong Zhang
322 Eighth Ave, Suite 1200
New York, NY 10001
646-766-1914
xzhang@seidenlaw.com

*Counsel for Respondent Hui Qin*